IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CATHY S. DUNCAN-LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 10-cv-1094 (GMS) |
| JOHN E. POTTER, POSTMASTER | ) | |
| GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

## I.    INTRODUCTION

The plaintiff, Cathy S. Duncan-Lawrence ("Duncan-Lawrence"), filed a Complaint (D.I.

1) against the defendant, John E. Potter,[1] Postmaster General of the United States Postal Service

("Postmaster General" or "the defendant")[2], on December 14, 2010.  In her Complaint, Duncan-

Lawrence seeks compensatory damages, as well as cost of suit and attorney's fees in connection

with the defendant's alleged violation of the Age Discrimination in Employment Act of 1967, as

amended, 29 U.S.C. §§ 621-34 (the "ADEA").  (*Id.* at 1-3.)  Duncan-Lawrence asserts that, from

October 2008 through September 2009, the defendant violated the ADEA by discriminating

against her on account of her age in the allocation of work hours.[3]  (*Id.* at 2.)  Additionally,

Duncan-Lawrence asserts that her supervisor, Eduardo Gonzales ("Gonzales"), retaliated against

---

[1] At the time of filing the Complaint, Duncan-Lawrence named John E. Potter, then Postmaster General, as the defendant.  Duncan-Lawrence subsequently revised the Complaint to reflect the name of the current Postmaster General, Patrick R. Donahoe, who assumed the position January 14, 2011.

[2] Duncan-Lawrence names the Postmaster General as the only defendant.  However, the Complaint arises from local scheduling decisions made at the New Castle Post Office and interactions that occurred between Duncan-Lawrence and an office supervisor, Eduardo Gonzales ("Gonzales").  Gonzales was the Customer Services Supervisor of the New Castle Branch and was responsible for creating the weekly schedules for Part Time Flexible ("PTF") clerks during the relevant time period.  (D.I. 14 at 4.)

[3] The defendant argues that only those claims that occurred after September 29, 2009 and were accepted as timely for investigation by the EEOC Complaint, are properly before this court.  (D.I. 22 at 8.)  For purposes of this motion, however, the court will consider the entire time period Duncan-Lawrence details.

her for prior EEOC activity when he ordered her to leave the workroom floor in January of 2010. (*Id.*) On February 17, 2012, following completion of discovery, the defendant filed a Motion for Summary Judgment (D.I. 14) pursuant to Federal Rule of Civil Procedure 56(c), asserting that Duncan-Lawrence fails to state *prima facie* claims of age discrimination and retaliation because she has not demonstrated that she was subject to an adverse employment action. (*Id.* at 10.) In response, Duncan-Lawrence filed an Answering Brief opposing the motion on March 16, 2012 (D.I. 21) and, on March 29, 2012, the defendant filed a Reply (D.I. 22.) Presently before the court is the defendant's Motion for Summary Judgment. (D.I. 14.) For the reasons that follow, the court will grant the defendant's motion.

## II.    BACKGROUND

Duncan-Lawrence began working as a Part Time Flexible[4] Distribution window clerk ("PTF") at the New Castle Post Office in New Castle, Delaware in 1999 and remained employed in that position until September of 2011.[5] (D.I. 1 at 1.) Duncan-Lawrence alleges that from October 2008 through September 2009, two PTF clerks, D.B. and B.S., received more hours than she was scheduled and were permitted to work overtime. (D.I. 14 at 4 (citing D.I. 15 at A208, A212).) Throughout the relevant time period, Duncan-Lawrence was over fifty-five years of age. (D.I. 1 at 1.) Duncan-Lawrence asserts that she raised concerns about the number of hours she was scheduled on a number of occasions with supervisors. (D.I. 14 at 4 (citing D.I. 15 at

---

[4] During the relevant time period, a collective bargaining agreement guaranteed PTF clerks a minimum of two hours of work per day and no more than forty hours per week. (D.I. 14 at 3.) In 2008, a memo was issued to management, indicating that PTF clerks should not work more than thirty-six hours per week. (D.I. 15 at A113.)

[5] In September 2011, "all the PTFs within [the] office were changed over to [thirty]-hour regular clerks." (*Id.* at A202.) During the relevant time period, the PTF clerks at the New Castle Post Office included Duncan-Lawrence, Brenda Thomas, D.B., B.S., M.F., C.W., and K.B. (*Id.* at A131-36.) In addition, the Post Office staffs full-time, or regular, clerks who work set schedules and additional hours.

2

A83; A95).)  In response to her concerns and similar complaints raised by others,[6] Leon Tucker

("Tucker"), a union shop steward, was tasked with reviewing the weekly schedule to determine if

the PTF clerk hours were equitably distributed.[7]  (D.I. 15 at A217-18, A83.)  New Castle Post

Office Postmaster Chester Kleinot ("Kleinot") also reviewed the PTF clerks' schedules.  (D.I. 14

at 4.)

Gonzales assumed scheduling responsibilities for the New Castle location in 2006.  (D.I.

15 at A215, A223.)  Gonzales noted in his deposition testimony that he generally attempted to

schedule each PTF clerk for five to six hours of work per day and assigned additional hours to

meet the operational needs of the facility.  (D.I. 14 at 4, 13 (citing D.I. 15 at A82-83).)  On

October 29, 2009, Duncan-Lawrence approached Gonzales during her shift and asked, "When

are you going to make the hours even for all us clerks?" and, referring to a recent memorandum

limiting PTF clerks to thirty-six hours per week,[8] "When are you going to make it equal so we

can all get the hours?"  (*Id.* at 5 (quoting D.I. 15 at A218-219).)  Gonzales purportedly responded

to her question by stating, "Go look in a mirror."  (*Id.*)  Duncan-Lawrence asserts that Gonzales'

statement was directed at her age.  Duncan-Lawrence did acknowledge in her deposition

testimony, however, that no reference to her age was ever made during her tenure at the New

Castle Post Office aside from this alleged incident.  (*Id.* at 4 (citing D.I. 15 at A214).)

In January 2010, Duncan-Lawrence became involved in an argument on the workroom

floor with another PTF clerk, K.B.  According to Duncan-Lawrence, K.B. was displeased with

her because she altered a sorting parcel procedure and proceeded to yell and curse at her.  (*Id.* at

---

[6] Duncan-Lawrence testified in her deposition that "[Gonzales] knew of us all being upset about the hours." (D.I. 15 at A219.)  Duncan-Lawrence stated that only one PTF clerk, D.B., was satisfied with the work hour allocation.  (*Id.*)

[7] Gonzales testified that "[Tucker] determined there were no discrepancies in scheduling because the hour sheets were examined based on the weekly schedules which averaged [thirty-five] to [thirty-nine] hours per week per [PTF] clerk."  (*Id.* at A83.)  As the defendant correctly notes, however, the hours scheduled were not necessarily synonymous with the hours actually worked.  (D.I. 14 at 4 n.6.)

[8] *See supra* note 4.

5 (citing D.I. 15 at A220).) Duncan-Lawrence attempted to explain to K.B. that the Postmaster had approved the change, but was unsuccessful in quieting K.B. (*Id.*) Gonzales came out of his office and asked K.B. to quiet down. (*Id.*) K.B. continued to berate Duncan-Lawrence while Duncan-Lawrence tried to explain to both K.B. and Gonzales that the Postmaster approved the change. (*Id.*) Gonzales told Duncan-Lawrence he did not want to hear from her, but she continued to try to explain her position. (*Id.*) At that point, Duncan-Lawrence asserts that Gonzales said, "You always have to have the last word, Cathy. You know what? If you want the last word, go to your car." Duncan-Lawrence voluntarily clocked out and left the Post Office. (*Id.* at 5-6 (citing D.I. 15 at A220-21).) Following this incident, Duncan-Lawrence called out of work for the remainder of the week, electing to use her sick leave. (*Id.* at 6 (citing D.I. 15 at A221).) Duncan-Lawrence was not disciplined for this incident. (*Id.*) In addition, there were no notations placed in her file and she was not docked pay. (*Id.*)

On November, 13, 2009, Duncan-Lawrence filed an EEOC Complaint.[9] (*Id.* at 6.) The Complaint was not resolved at the informal stage, however, and Duncan-Lawrence subsequently filed a formal EEOC Complaint on December 23, 2009. (*Id.*) Like Duncan-Lawrence's Complaint in the instant action, her EEOC Complaint alleged discriminatory conduct dating to the beginning of 2008. (*Id.*) The EEOC Complaint was subsequently amended to include a retaliation claim. (*Id.*) The United States Postal Service ("USPS") completed its investigative report in connection with Duncan-Lawrence's allegations on June 22, 2010. (*Id.*) On September 16, 2010, the USPS issued a Final Agency Decision (the "USPS Decision") denying her claims. (*Id.*) In particular, the USPS Decision dismissed Duncan-Lawrence's retaliation allegation for failure to state a claim and concluded that Duncan-Lawrence failed to identify any adverse harm

---

[9] Duncan-Lawrence stated in her deposition that she filed five prior EEOC actions against the USPS. (D.I. 15 at A208.) Of the two discussed at length in her deposition, neither alleged age discrimination. (*Id.* at A208-11.)

4

suffered as a result of the January 2010 incident. (*Id.*) In sum, the USPS Decision found that Duncan-Lawrence failed to state *prima facie* claims for either age discrimination or retaliation. (D.I. 14 at 6-7 (citing D.I. 15 at A1-2, A8-11).)

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material fact exists, the district court must view the evidence in a light most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing FED. R. CIV. P. 56(e)).

Importantly, the mere existence of some evidence in support of the nonmoving party will not prove sufficient for denial of a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* Specifically, the party opposing

summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex*, 477 U.S. at 325). Thus, a nonmoving party asserting that a material fact is in dispute must support this assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute." *See* FED. R. CIV. P. 56(c)(1). If the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## IV.    DISCUSSION

The defendant asserts that Duncan-Lawrence has failed to state a *prima facie* case for her age discrimination and retaliation claims because she has not demonstrated that she was subject to an adverse employment action. (D.I. 14 at 1.) Specifically, the defendant maintains that Duncan-Lawrence cannot establish an adverse action in connection with her age discrimination claim because, in her capacity as a PTF clerk, Duncan-Lawrence was not entitled to work more than two hours per day. (*Id.*) Moreover, the defendant argues that Duncan-Lawrence has not and, indeed, cannot establish that her age was a determinative factor in her employer's scheduling decisions. (*Id.*) With respect to her retaliation claim, the defendant argues that Duncan-Lawrence has failed to state a *prima facie* case of retaliation because she did not suffer an adverse employment action when she "voluntarily clocked out and left the workroom floor." (*Id.*) Absent an adverse employment action, the defendant asserts that Duncan-Lawrence cannot establish retaliation by the required standard. The defendant also asserts, in the alternative, that,

even if such allegations were established, Duncan-Lawrence has not offered evidence of pretext for discrimination or retaliation. (*Id.*)

Conversely, Duncan-Lawrence argues that she has stated a *prima facie* case of age discrimination. (D.I. 21 at 2.) In support, Duncan-Lawrence alleges that the youngest PTF clerks "were given more hours" and that, as a result of this disparity, she directly suffered an adverse action with respect to her compensation. (*Id.*) Duncan-Lawrence also challenges the defendant's proffered rationale for the scheduling discrepancy as pretextual, arguing that the record supports an inference of age animus in the distribution of work hours. (*Id.*) Additionally, Duncan-Lawrence asserts that she has sufficiently stated a *prima facie* case of retaliation. (*Id.*) Specifically, Duncan-Lawrence states that Gonzales, her supervisor and alleged retaliator,[10] was aware of her prior EEOC activity and that, as a result of this activity, she suffered an adverse action and tangible harm in the loss of sick leave and pay when she left the workroom floor during her shift. (*Id.*)

## A.   Duncan-Lawrence's ADEA Claim

Under the ADEA, it is unlawful for an employer to limit, segregate, or classify employees in any way that would deprive or tend to deprive an individual employee of employment opportunities or otherwise adversely affect that employee's status due to age. 29 U.S.C. § 623(a)(2). ADEA age discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1972); *see also Berry v. Delaware*, 2008 WL 906104, at *2-3 (D. Del. 2008). To establish an inference of discrimination, *McDonnell Douglas* places upon the plaintiff the burden of proof, the initial burden of production, and requires she demonstrate a *prima facie* case of discrimination by showing that: (1) the plaintiff is forty years of age or older; (2) the defendant took an adverse

---

[10] *See supra* note 2.

7

employment action against the plaintiff; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). In light of the record before it and in consideration of the relevant law, the court concludes, for the reasons that follow, that Duncan-Lawrence has failed to establish her age discrimination cause of action. At all relevant times, Duncan-Lawrence was fifty-seven years old and, therefore, meets the first *McDonnell Douglas* requirement. (D.I. 1 at 1.) Duncan-Lawrence's claim fails, however, because she is unable to demonstrate any adverse employment action taken against her.

The Supreme Court has defined adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Swain v. City of Vineland*, 2012 WL 759959 at *3 (3d Cir. Jan. 11, 2012). The defendant argues that because the PTF position, by its very nature, is based on a schedule of less than forty weekly hours, an assignment of fewer hours does not give rise to a "significant change in employment status . . . or . . . a significant change in benefits." *See Burlington*, 524 U.S. at 761. In response, Duncan-Lawrence asserts that allocating fewer hours to an employee, albeit an employee guaranteed only two hours per day, qualifies as an action "'serious and tangible' enough to alter an employee's compensation, terms, conditions, or privileges of employment." Duncan-Lawrence, however, cites no case law in support of her argument or any substantive evidence in the record of discriminatory animus. Absent such support, and in view of relevant case law, the court finds Duncan-Lawrence's argument unavailing.[11]

---

[11] *See, e.g., Manning v. Potter*, 250 Fed. App'x 743, 746 (7th Cir. 2007) (concluding that a part-time flexible letter carrier with a four hour minimum work hour guarantee did not suffer a "materially adverse employment

The court notes that its conclusion finds further support in a comparison of the weekly hours scheduled at the Post Office. Specifically, while Duncan-Lawrence argues that PTF clerks D.B. and B.S. received more work hours, these employees were not, in fact, similarly situated. (D.I. 14 at 12 (citing D.I. 15 at A212, A49).) It is well-established that Duncan-Lawrence may not "pick and choose a person she perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than she." *Simpson v. Kay Jewelers Div. Of Sterling, Inc.*, 142 F.3d 639, 646-47 (3d Cir. 1998). While Duncan-Lawrence, D.B., and B.S. were all employed as PTF clerks, their titles and responsibilities differed. Duncan-Lawrence was a PTF Distribution window clerk. (D.I. 15 at A106.) D.B. and B.S. acted, during the relevant time, as PTF Sales, Services/Distribution Associates. (*Id.* at A132, 134.) In addition, these employees' respective training differed, as D.B. was the only PTF clerk trained in business reply[12] and B.S. was trained as both a box clerk and window clerk. (*Id.* at A83.) Because of their training qualifications, D.B. and B.S. were able to perform job functions Duncan-Lawrence was not qualified to perform.[13] (*Id.* at A205.) Not only does this evidence support a legitimate, non-discriminatory reason for any differential in work hours, it also demonstrates that D.B. and B.S. were not similarly situated to Duncan-Lawrence. (D.I. 14 at 12.)

---

action" by being scheduled less than forty hours per week); *Gomez-Perez v. Potter*, 2011 WL 6445569 at *6 (1st Cir. Dec. 22, 2011) (finding that a PTF employee was not subject to an adverse employment action where that employee was scheduled only six hours per day); *Williams v. Potter*, 2010 WL 1245835 at *3 (D. Md. March 25, 2010) (concluding that a reduction in hours is an adverse employment action where the PTF employee was guaranteed only four hours per day).

[12] D.B. received business reply training at a different postal office before transferring to New Castle. (D.I. 21-3 at B-06.)

[13] The court notes that Duncan-Lawrence testified that she requested training on multiple occasions. (D.I. 15 at A205.) However, there is no evidence to contradict statements made by her supervisors stating that her lack of training was not based on animus or discriminatory intent. In his affidavit, Kleinot stated that "[Duncan-Lawrence] went to window training and failed. An offer was made for her to go back but she declined as she had health issues. She is not in line for the next training and it will be awhile before she can be sent to training." (*Id.* at A96.)

9

In addition, Duncan-Lawrence alleges that Gonzales assigned hours during the relevant time period based upon who he did and did not like. (D.I. 15 at A114.) Even if true, federal law does not guarantee that supervisors like their subordinates and treat them well. *See, e.g., Hewlett v. Waffle House, Inc.*, 2006 WL 1582423, at \*7 (M.D. Ga. June 5, 2006) ("Although performance nitpicking and a cold relationship with a supervisor might cause an employee to lose some self-esteem, the federal employment laws are not a 'general civility code,' and they do not make actionable the 'ordinary tribulations of the workplace.'" (citation omitted)).

Ultimately, the only evidence to which Duncan-Lawrence points to support her claim of age discrimination is Gonzales' comment that she should "look in the mirror." Duncan-Lawrence claims that she could tell "exactly what [Gonzales] meant." (D.I. 15 at A207, A214). She also admits, however, that following the statement she went home and "questioned her mother," in an attempt to understand the possible meaning of the remark. (*Id.* at A218.) Gonzales himself offers a plausible alternative explanation as to its meaning; specifically, that he wanted Duncan-Lawrence to examine her own workplace conduct and performance. (*Id.* at A84.)

In view of the record before it, the court concludes that there are no genuine issues of material fact and, further, that no reasonable juror could find in Duncan-Lawrence's favor. Duncan-Lawrence's age discrimination claim fails because she is unable to demonstrate any adverse employment action. *See, e.g., Podobnik*, 409 F.3d at 594 (concluding that "bare assertions, conclusory allegations[,] or suspicions" are insufficient to support the presence of a genuine issue of material fact). Further, Duncan-Lawrence has not sustained her burden of demonstrating that age was a determinative factor in the complained of conduct. Thus, the defendant is entitled to summary judgment on Duncan-Lawrence's age discrimination claim.

### B. The Defendant's Legitimate, Non-Discriminatory Reasoning

Assuming that Duncan-Lawrence had established a *prima facie* case of discrimination, the burden would then shift to the employer-defendant to articulate a legitimate, nondiscriminatory business reason for its action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff, however, retains the burden of persuasion. *Id.* at 256. If the defendant establishes a legitimate, nondiscriminatory business reason for its action, the plaintiff must then "have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Id.*

There is nothing before the court that contradicts the defendant's assertion that operational demands dictated the allocation of work hours to the New Castle Post Office personnel. Notably, Duncan-Lawrence has not offered sufficient evidence to prove that the defendant acted with animus or discriminatory intent in assigning her work hours. Nor is the defendant's proffered reason for his action weak, incoherent, implausible, or so inconsistent that "a reasonable fact finder could rationally find it unworthy of credence." *See Sarullo v. United States Postal Service*, 352 F.3d 789, 800 (3d Cir. 2003). In view of the foregoing, the court finds that there is no genuine issue of material fact on the dispositive legal issue of discriminatory motive. Accordingly, the court will grant the defendant's motion for summary judgment with respect to Duncan-Lawrence's age discrimination claim.

### C. Duncan-Lawrence's Retaliation Claim

To advance a *prima facie* case of retaliation, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *See, e.g.,*

*Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). To obtain summary judgment, the employer must show that the trier of fact could not conclude, as a matter of law, that retaliatory animus: (1) played a role in the employer's decision-making process; and (2) had a determinative effect on the outcome of that process. The employer may satisfy these elements by: (1) establishing the plaintiff's inability to raise a genuine issue of material fact as to either one or more elements of the plaintiff's *prima facie* case; or (2) offering a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation. *See Jalil,* 873 F.2d at 708; *see also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).

Duncan-Lawrence bases her retaliation claim on the January 2010 incident that occurred on the workroom floor and resulted in Gonzales telling her that if she wanted the last word, she could have it "in her car." (D.I. 15 at A208, A221.) Upon exiting the workroom floor, Duncan-Lawrence voluntarily clocked out for the day and left work. (*Id.* at A221.) As noted, Duncan-Lawrence utilized her sick leave to stay away from work the rest of the week and, notably, was not subject to any disciplinary action upon her return. (*Id.*)

Duncan-Lawrence filed her EEOC Complaint prior to the date of the incident and, therefore, meets the first element. However, Duncan-Lawrence fails to demonstrate that there was an adverse employment action and, as a result, cannot establish a *prima facie* case of retaliation. *See, e.g., Weston v. Pennsylvania*, 251 F.3d 420, 430-31 (3d Cir. 2001) (concluding that a reprimands is not an adverse action if it does not alter conditions of employment); *Speer v. Rand McNally & Co.*, 123 F.3d 658, 664 (7th Cir. 1997) (holding that the plaintiff did not suffer a materially adverse employment action when her boss "yelled at her [and] did not make her feel

as if she was part of the work group"). Specifically, Duncan-Lawrence's filing of an EEOC Complaint did not result in a change to her conditions of employment or her status as an employee. Thus, in view of the record before it and in consideration of the relevant law, the court concludes that Duncan-Lawrence fails to state the *prima facie* case required for a retaliation claim and summary judgment is appropriate.

## V.    CONCLUSION

For the foregoing reasons, the court will grant the defendant's Motion for Summary Judgment. (D.I. 13.)

Dated: September 1⁄2, 2012

_____
CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CATHY S. DUNCAN-LAWRENCE, )
)
Plaintiff, )
)
v. )
) C.A. No. 10-cv-1094 (GMS)
JOHN E. POTTER, POSTMASTER )
GENERAL, )
)
Defendant. )
_____ )

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1.  The defendant's Motion for Summary Judgment (D.I. 13) is GRANTED; and

2.  The Clerk of Court is directed to close this case.

Dated: September 1 8, 2012

_____
CHIEF, UNITED STATES DISTRICT JUDGE